US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

OCT 25 2016

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### FORT SMITH DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 2:16CR20029-001** |
| | ) | |
| | ) | |
| **CLARENCE C. GARRETSON** | ) | |

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this Plea Agreement. The agreement of the parties is as follows:

### COUNTS OF CONVICTION AND DISMISSAL

1.    The Defendant, **CLARENCE C.GARRETSON**, hereby agrees to plead guilty to Counts One, Two, Four, Eight, and Eleven of the Superseding Indictment returned by the grand jury on October 5, 2016, that charges the Defendant with interstate transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).   If the Court accepts this Plea Agreement, once the Court has pronounced sentence, the United States will move to dismiss Counts Three, Five, Six, Seven, Nine and Ten of the Superseding Indictment.   Further, in exchange for the Defendant's plea of guilty to Counts One, Two, Four, Eight and Eleven of the Superseding Indictment, the United States agrees that it will not prosecute Lisa Garretson, the Defendant's wife, for her concealment of the Defendant's earnings by her acceptance of payment for wages the Defendant earned while the Defendant was receiving Social Security benefits.

### ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

2.    The Defendant has fully discussed with defense counsel the facts of this case and the

elements of the crimes to which the Defendant is pleading guilty.   The Defendant has committed each of the elements of the crimes to which the Defendant is pleading guilty, and admits that there is a factual basis for this guilty plea.   The following facts are true and undisputed:

## COUNT ONE

a.      In 2014, the Defendant was an over-the-road truck driver for C & T Trucking Company in Van Buren, Arkansas.   Prior to departure on a truck trip to the West Coast in July 2014, the Defendant requested and received a "rider waiver" from C & T Trucking so that Minor #1 could accompany the Defendant as a passenger. According to records obtained from C & T Trucking, the Defendant departed Van Buren, Arkansas on or about July 12, 2014, and returned to Van Buren, Arkansas on or about July 19, 2014.   Van Buren is in the Western District of Arkansas, Fort Smith Division.

b.      In May 2016, Minor #1 told her mother and Cpl. Heather Hoffsommer, a police officer with the Van Buren, Arkansas, Police Department and a school resource officer at the school Minor #1 attended, that the Defendant had raped her when she was on the truck trip with the Defendant in 2014.   Investigators with the Van Buren Police Department arranged for Minor #1 to be interviewed at the Hamilton House Children's Safety Center in Fort Smith.

c.      Minor #1 told the forensic interviewer in a recorded interview that the Defendant "made me get naked and stuck some body parts in me" and "he done it the whole time we were on the road."   Minor #1 told the forensic interviewer that the Defendant pushed her onto the bed inside the truck and held her down so she could not move.   Minor #1 explained that the Defendant placed his penis inside her vagina.   Minor #1 told the forensic interviewer this happened near casinos where the Defendant had parked the truck.   Minor #1 was 10 years old and the Defendant was 63 in July 2014 when the Defendant transported Minor #1 on the truck trip she described to the

forensic interviewer.

d.     When Van Buren Police Department Detective Jonathan Wear determined the events described by Minor #1 occurred outside the State of Arkansas, he contacted Federal Bureau of Investigation Special Agent Rob Allen for assistance.     Special Agent Allen reviewed the Defendant's bank records, transportation logs, fuel and toll receipts, and casino records and learned the Defendant departed Van Buren, Arkansas on or about July 12, 2014 and traveled to California through Texas, New Mexico and Arizona, and returned through Oklahoma to the Western District of Arkansas on or about July 19, 2014. The Defendant transported Minor #1 in interstate commerce because he drove Minor #1 across multiple state lines during the truck trip from Van Buren, Arkansas to California and back to Arkansas in July 2014.

e.     The Defendant stipulates and agrees that he transported Minor #1 in interstate commerce from Van Buren, Arkansas, in the Western District of Arkansas, through Texas, New Mexico, Arizona, California, Oklahoma and back to the Western District of Arkansas, Fort Smith Division, in July 2014.     The Defendant further stipulates and agrees that he transported Minor #1, who had not attained the age of 18 years, in interstate commerce with intent to engage in sexual activity with Minor #1.     The Defendant stipulates and agrees that the sexual activity he engaged in with Minor #1 was sexual intercourse, a violation of Arkansas Code Annotated 5-14-101, Rape, a Class Y felony, because in July 2014, Minor #1 was less than 14 years of age and the conduct engaged in was sexual intercourse, as that term is defined in Arkansas Code Annotated 5-14-101.

### COUNT TWO

f.     In 1998, the Defendant and his wife were approved by the Arkansas Department of Human Services ("DHS") to operate a foster home.     Later, the Defendant and his wife were approved by DHS to become an "adoptive" home.     After Special Agent Allen began investigating the

Defendant's conduct with Minor #1, Special Agent Allen learned that the Defendant had been a DHS-approved foster parent and at least 35 minors had been placed in the Garretson residence during the time the Defendant and his operated a foster home in Van Buren. Special Agent Allen saw in DHS documents that DHS had received a report in 2002 from a foster child then living in the Defendant's residence that she had been sexually assaulted by the Defendant. Based on information found within DHS records, Special Agent Allen began locating individuals who had been in foster care at the Garretson residence. Special Agent Allen located Minor #2 and interviewed her in June 2016.

g.      Minor #2, born in April 1987, was placed by DHS in the Defendant's home in or about 2000 when Minor #2 was 13 years old. According to DHS records, Minor #2 was a foster child in the Defendant's home from July 31, 2000, through December 14, 2004.

h.      Minor #2 told Special Agent Allen that she was taken on over-the-road truck trips by the Defendant when she was his foster child. Minor #2 was interviewed at the Hamilton House Children's Safety Center in July 2016 and told the forensic interviewer that the Defendant frequently took her on long distance trips in his truck and had sex with her on those trips. Minor #2 stated the Defendant placed his penis inside her vagina when they were inside the parked truck and stopped along the route. Minor #2 described one particular sexual assault occurred near a casino in California where the Defendant had stopped and parked the truck for the night. According to Minor #2, all the truck trips she went on with the Defendant began and ended in Van Buren, Arkansas.

i.      The Defendant stipulates and agrees that he transported Minor #2 in interstate commerce from Van Buren, Arkansas, in the Western District of Arkansas, to Texas, Arizona, New Mexico, California and Oklahoma between in or about May 2001 and on or about August 12, 2001. The

Defendant further stipulates and agrees that he transported Minor #2, who had not attained the age of 18 years, in interstate commerce with intent to engage in sexual activity with Minor #2.  The Defendant stipulates and agrees that the sexual activity he engaged in with Minor #2 was a violation of Arkansas Code Annotated 5-14-120, Violation of a Minor in the First Degree, a Class C felony, because at the time of the offense in 2001, Minor #2 was over 13 years old and less than age 18 and the conduct engaged in was sexual intercourse. The Defendant stipulates and agrees that Minor #2 was a foster child in his care, custody and control when he transported her in interstate commerce with intent to engage in sexual activity with her.

## COUNT FOUR

j.      In 1999, DHS placed Minor #3 and his two older sisters in the Defendant's home. According to DHS records, Minor #3 and his two sisters entered the Defendant's home on September 17, 1999 as foster children. In 2001, the Defendant and his wife legally adopted Minor #3.

k.      Minor #3 was interviewed by Special Agent Allen in July 2016.  Minor #3, born in April 1990, told Special Agent Allen that Minor #3 was sexually assaulted by the Defendant on over-the-road truck trips.  Minor #3 stated that the Defendant took him on long distance truck trips starting in the summer of 2001 when Minor #3 was 11 years old.  Minor #3 explained that the Defendant drove a car hauler and Minor #3 rode as a passenger.  According to Minor #3, the Defendant hauled vehicles to and from California and the trips began and ended in Van Buren, Arkansas.  Minor #3 stated the Defendant sexually assaulted him on multiple out-of-state truck trips during summer vacation from school in 2002 and 2003.  Minor #3 stated that after the Defendant stopped and parked at truck stops near casinos, the Defendant would have Minor #3

perform oral sex on the Defendant. Minor #3 explained this involved the Defendant placing his penis inside the mouth of Minor #3.

l.       The Defendant stipulates and agrees that he transported Minor #3 in interstate commerce from Van Buren, Arkansas, in the Western District of Arkansas, to Texas, Arizona, New Mexico and Oklahoma between in or about May 2001 and in or about September 2001. The Defendant further stipulates and agrees that he transported Minor #3, who had not attained the age of 18 years, in interstate commerce with intent to engage in sexual activity with Minor #3. The Defendant stipulates and agrees that the sexual activity he engaged in with Minor #3 was a violation of Arkansas Code Annotated 5-14-103, Rape, a Class Y felony, because Minor #3 was less than 14 years of age and the conduct involved penetration of the mouth by the penis of the Defendant. The Defendant stipulates and agrees that Minor #3 was in the Defendant's care, custody and control when he transported Minor #3 in interstate commerce with intent to engage in sexual activity with him.

## COUNT EIGHT

m.       On September 17, 1999, DHS placed Minor #5 and her two siblings in the Defendant's home. According to DHS records, Minor #5 was a foster child in the Defendant's home from September 17, 1999 through December 4, 2004. Minor #5 was born in July 1987.

n.       Minor #5 was interviewed by Special Agent Allen in June and July 2016. Minor #5 told Special Agent Allen that she was sexually assaulted by the Defendant on an over-the-road truck trip to Modesto, California. Minor #5 explained that the Defendant and she left Van Buren, Arkansas, drove through different states to Modesto, California, and returned to Van Buren.

o.       Minor #5 stated that the Defendant engaged in sexual intercourse with her on the truck trip

to Modesto, California during the summer of 2000 when she was 13 years old.  Minor #5 stated the Defendant drove a car hauler and she was a passenger on the trip to Modesto, California.  Minor #5 stated that the Defendant had sexual intercourse with her on the trip to Modesto, which she stated meant the Defendant placed his penis inside her vagina.

p.      The Defendant stipulates and agrees he transported Minor #5 in interstate commerce from Van Buren, Arkansas, in the Western District of Arkansas, to Modesto, California, and back to Van Buren, Arkansas, between in or about May 2000 and in or about September 2000.  The Defendant further stipulates and agrees that he transported Minor #5, who had not attained the age of 18 years, in interstate commerce with intent to engage in sexual activity with Minor #5.  The Defendant stipulates and agrees that the sexual activity he engaged in with Minor #5 was a violation of Arkansas Code Annotated 5-14-103, Rape, a Class Y felony.  The Defendant stipulates and agrees that he was the foster parent of Minor #5, and Minor #5 was in the Defendant's care, custody and control when he transported Minor #5 in interstate commerce with intent to engage in sexual activity with her.

## COUNT ELEVEN

q.      Special Agent Allen interviewed Minor #8 in September 2016.  Minor #8 was born in January 1993.  Minor #8 told Special Agent Allen that the Defendant transported her in his car hauler from Arkansas, where she had been living with her father in Mountainburg, Arkansas, to Oroville, California, and back to Arkansas on more than one occasion when she was nine and ten years old.  Minor #8 stated she and her siblings went back and forth between Arkansas and California because her parents were living in different states.  Minor #8 explained to Special Agent Allen that the Defendant transported her and her siblings between Arkansas and California

as a favor to her family.

r.      Between in or about January 2002 through in or about September 2002, the Defendant transported Minor #8 from Arkansas to California when Minor #8 was 9 years old. Minor #8 stated the Defendant had her sleep nude or partially nude in the bed with him that was inside the truck. Minor #8 explained that this occurred when the Defendant stopped and parked the truck for the night. Minor #8 stated she recalled the Defendant usually stopped and parked at casinos en route to California.

s.      Minor #8 told Special Agent Allen that on the trip from Arkansas to California when she was 9 years old, the Defendant placed his fingers inside her vagina. This constitutes a violation of Arkansas Code Annotated 5-14-103, Rape, a Class Y felony.

t.      The Defendant stipulates and agrees that he transported Minor #8 in interstate commerce from Van Buren, Arkansas, in the Western District of Arkansas, to Oroville, California, between in or about January 2002 and September 2002. The Defendant further stipulates and agrees that he transported Minor #8, who had not attained the age of 18 years, in interstate commerce with intent to engage in sexual activity with Minor #8. The Defendant stipulates and agrees that the sexual activity he engaged in with Minor #8 was a violation of Arkansas Code Annotated 5-14-103, Rape, a Class Y felony. The Defendant stipulates and agrees that Minor #8 was in the Defendant's care, custody and control when he transported Minor #8 in interstate commerce with intent to engage in sexual activity with her.

## ADVICE OF RIGHTS

3.      The Defendant hereby acknowledges that he has been advised of and fully understands the following constitutional and statutory rights:

a.   to have an attorney and if the Defendant cannot afford an attorney, to have one provided to
     him and paid for at the United States' expense;

b.   to persist in his plea of not guilty;

c.   to have a speedy and public trial by jury;

d.   to be presumed innocent until proven guilty beyond a reasonable doubt;

e.   to confront and examine witnesses who testify against him;

f.   to call witnesses on his behalf;

g.   to choose to testify or not testify and that no one could force the Defendant to testify; and,

h.   to have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

4.     The Defendant hereby acknowledges that he understands with respect to each count to
which he pleads guilty, he thereby WAIVES all of the rights listed as (b) through (h) of the above
paragraph.

## WAIVER OF ACCESS TO RECORDS

5.     The Defendant hereby waives all rights, whether asserted directly or by a representative,
to request or receive from any department or agency of the United States any records pertaining to
the investigation or prosecution of this case, including without limitation any records that may be
sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C.
§ 552a.

## WAIVER OF "HYDE" CLAIM

6.     The Defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A
(Statutory Note), for attorney fees and other litigation expenses arising out of the investigation or
prosecution of this matter.

## EFFECTS OF BREACH OF THIS AGREEMENT BY DEFENDANT

7.     The Defendant agrees that if after signing this Plea Agreement the Defendant commits any
crimes, violates any conditions of release, or fails to appear for sentencing, or if the Defendant
provides information to the Probation Office or the Court that is intentionally misleading,

intentionally incomplete, or intentionally untruthful, or if the Defendant violates any term of this Plea Agreement, takes a position at sentencing which is contrary to the terms of this Plea Agreement or attempts to withdraw from this Plea Agreement, this shall constitute a breach of this Plea Agreement which shall release the United States from any and all restrictions or obligations placed upon it under the terms of this agreement and the United States shall be free to reinstate dismissed charges or pursue additional charges against the Defendant. The Defendant shall, however, remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty unless permitted to do so by the Court.

8.      The Defendant further agrees that a breach of any provisions of this Plea Agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence and the United States shall be allowed to use and to introduce into evidence any one or more of the following:

a.      admissions against interest, both oral and written, made by the Defendant to any person;
b.      statements made by the Defendant during his/her change of plea hearing;
c.      the factual basis set forth in the Plea Agreement;
d.      any testimony given under oath in these proceedings or to a grand jury or a petit jury;
e.      any and all physical evidence of any kind which the Defendant has provided to the United States; and,
f.      any and all information provided by the Defendant to the United States' attorneys, or to federal, state, county, and/or local law enforcement officers.

## MAXIMUM PENALTIES

9.      **Maximum Penalties for Count One:**

The Defendant acknowledges that he has been advised of the maximum penalties for Count One of the Superseding Indictment. The Defendant agrees that he faces as to Count One:

a.      a maximum term of imprisonment for LIFE;
b.      a mandatory minimum term of imprisonment for 10 years;
c.      a maximum fine of $250,000.00;

d.    both imprisonment and fine;
e.    a term of supervised release for **not less than five years or life** which begins after release from prison;
f.    a possibility of going back to prison if the Defendant violates the conditions of supervised release;
g.    a special assessment of $100.00; and,
h.    restitution as ordered by the Court.

10.    **Maximum Penalties for Counts Two, Four, Eight and Eleven:**

The Defendant acknowledges that he has been advised of the maximum penalties for

Counts Two, Four, Eight and Eleven of the Superseding Indictment.   The Defendant agrees that

he faces as to Counts Two, Four, Eight and Eleven:

i.    a maximum term of imprisonment of 15 years, *per count;*
j.    a maximum fine of $250,000.00, *per count;*
k.    both imprisonment and fine;
l.    a term of supervised release for **not more than three years** which begins after release from prison;
m.    a possibility of going back to prison if the Defendant violates the conditions of supervised release;
n.    a special assessment of $100.00 *per count*; and,
o.    restitution as ordered by the Court.

## CONDITIONS OF SUPERVISED RELEASE

11.    The Defendant acknowledges that if a term of supervised release is imposed as part of the

sentence, the Defendant will be subject to the standard conditions of supervised release as

recommended by the United States Sentencing Commission and may be subject to other special

conditions of supervised release as determined by the Court.   The standard conditions of

supervised release are as follows:

a.    The Defendant shall not leave the judicial district without the permission of the Court or probation officer.
b.    The Defendant shall report to the probation officer in a manner and frequency directed by the Court or probation officer.
c.    The Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
d.    The Defendant shall support his dependents and meet other family responsibilities.
e.    The Defendant shall work regularly at a lawful occupation, unless excused by the probation

officer for schooling, training, or other acceptable reasons.

f.  The Defendant shall notify the probation officer at least ten days prior to any change in residence or employment.

g.  The Defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.

h.  The Defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

i.  The Defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer.

j.  The Defendant shall permit a probation officer to visit him at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.

k.  The Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

l.  The Defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court.

m.  The Defendant shall -- as directed by the probation officer -- notify third parties of risks that may be occasioned by the Defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the Defendant's compliance with such notification requirement.

## DEFENDANT'S ACKNOWLEDGMENT OF REQUIREMENT TO REGISTER AS A SEX OFFENDER

12.  I understand and acknowledge that I have been advised and understand that under the Sex Offender Registration and Notification Act, Title 42, United States Code, Section 16901, et seq., I must register and keep the registration current in each of the following jurisdictions: where I reside; where I am an employee; and where I am a student.  I understand that the requirements for registration include providing my name, my residence address, and the names and addresses of any places where I am or will be an employee or student, among other information.  I further understand that the requirement to keep the registration current includes informing the jurisdiction where I reside, am employed or attend school no later than three business days after any change of my name, residence, employment or student status.  I have been advised and understand that failure to comply with these obligations subjects me to prosecution for failure to register under

federal law in violation of Title 18, United States Code, Section 2250, which is punishable by a fine or imprisonment or both.

## RESTITUTION PURSUANT TO 18 U.S.C. § 2248

13.     The Defendant agrees to pay restitution for the full amount of the victims' losses to all victims of the offenses to which the Defendant is pleading guilty and to all victims of any offenses dismissed as a result of this Plea Agreement.   For purposes of this paragraph, the term "victim" is defined in 18 U.S.C. § 2248(c), and the term "full amount of the victims' losses" is defined in 18 U.S.C. § 2248(b)(3).   The Defendant further understands the amount of loss sustained by each victim will be determined during the course of preparation of the Presentence Investigation Report. The Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims.   The Defendant understands full restitution will be ordered regardless of Defendant's financial resources.   The Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate.   The Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.     The Defendant acknowledges that any restitution imposed is not dischargeable in any bankruptcy proceeding pursuant to 18 U.S.C. § 3613(e).

## AGREEMENT TO PROVIDE FINANCIAL INFORMATION

14.     The Defendant agrees that no later than thirty (30) days after the change of plea, the Defendant shall complete the Financial Disclosure Statement and the accompanying releases provided by the United States Attorney's Office and deliver them to the United States Probation Office and the United States Attorney's Office.   This Financial Disclosure Statement is sworn by the defendant to be true and correct under penalty of perjury.   The Defendant agrees that his failure to truthfully and fully complete the Financial Disclosure Statement and accompanying releases may result in the Government objecting to the Defendant receiving a reduction for acceptance of responsibility.

## NO OTHER CHARGES

15.     The United States agrees that no other federal charges, which stem from the activities described in the Superseding Indictment, will be brought against the Defendant in the Western District of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

16.     The parties acknowledge that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

17.     The Defendant acknowledges that discussions have taken place concerning the possible guideline range which might be applicable to this case.   The Defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court.   Further, the Defendant acknowledges that the actual range may be greater than

contemplated by the parties.   In the event that the actual guideline range is greater than the parties expected, the Defendant agrees that this does not give him the right to withdraw his plea of guilty.

## RELEVANT CONDUCT CONSIDERED

18.     At the sentencing hearing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the Defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

19.     In the event that it is determined that the Defendant has not been truthful with the Court as to any statements made while under oath, this Plea Agreement shall not be construed to protect the Defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE UNITED STATES

20.     The United States agrees not to object to a recommendation by the Probation Office or a ruling of the Court which awards the Defendant an appropriate-level decrease in the base offense level for acceptance of responsibility.  If the offense level in the Presentence Report is 16 or greater and the Court accepts a recommendation in the Presentence Report that the Defendant receive two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points. However, the United States will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if the Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following a) falsely

denies, or makes a statement materially inconsistent with, the factual basis set forth in this agreement, b) falsely denies additional relevant conduct in the offense, c) is untruthful with the United States, the Court or probation officer, or d) materially breaches this Plea Agreement in any way.

## UNITED STATES' RESERVATION OF RIGHTS

21.    Although the United States agrees not to object to certain findings by the Probation Office or to rulings of the Court, it reserves the right to:

a.    make all facts known to the Probation Office and to the Court;
b.    call witnesses and introduce evidence in support of the Presentence Report;
c.    contest and appeal any finding of fact or application of the Sentencing Guidelines;
d.    contest and appeal any departure from the appropriate Guideline range; and,
e.    defend all rulings of the District Court on appeal including those rulings which may be contrary to recommendations made or positions taken by the United States in this Plea Agreement which are favorable to the Defendant.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

22.    The United States' concessions on sentencing options are non-binding and made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure.  As a result, if the Court should reject the Defendant's requests or recommendations for certain findings of fact or applications of the Guidelines, the Defendant acknowledges that there is no right to withdraw the guilty plea.

## DISMISSAL OF COUNTS

23.    The United States' agreement to dismiss certain counts of the Superseding Indictment is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.  As a result, if the Court should reject the United States' motion to dismiss the agreed counts of the Superseding Indictment, the Defendant shall be afforded the right to withdraw his plea pursuant to Rule 11(c)(5)(B) of the Federal Rules of Criminal Procedure.

## AGREEMENT NOT BINDING ON THE COURT

24.     The parties agree that nothing in this agreement binds the District Court to:

a.      make any specific finding of fact;
b.      make any particular application of the Sentencing Guidelines;
c.      hand down any specific sentence;
d.      accept any stipulation of the parties as contained in this Plea Agreement; and,
e.      accept this Plea Agreement.

25.     The United States and the Defendant acknowledge that the Court has an obligation to

review the Presentence Report before it accepts or rejects this Plea Agreement.

## AGREEMENT DOES NOT BIND ANY OTHER ENTITY

26.     The parties agree that this Plea Agreement does not bind any governmental entity other

than the United States Attorney's Office for the Western District of Arkansas.

## ABANDONMENT OF PROPERTY

27.     The Defendant agrees to abandon any interest he may have in the hard drives that contain

images of sexually explicit activities and were seized and retained as evidence pursuant to the

search warrants executed on June 25, 2016.   The Defendant further consents to the destruction of

the same by the Federal Bureau of Investigation.

## SPECIAL ASSESSMENT

28.     The Defendant agrees to pay $500.00 as the special assessment in this case.

## REPRESENTATIONS BY DEFENDANT

29.     By signing this Plea Agreement, the Defendant acknowledges that:

a.      The Defendant has read this agreement (or has had this agreement read to him) and has carefully reviewed every part of it with defense counsel.
b.      The Defendant fully understands this Plea Agreement and is not under the influence of anything that could impede the Defendant's ability to fully understand this Plea Agreement.
c.      No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement.
d.      The Defendant is satisfied with the legal services provided by defense counsel in connection with this Plea Agreement and matters related to it.

e.    The Defendant has entered into this Plea Agreement freely, voluntarily, and without reservation and the Defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant.

## REPRESENTATIONS BY DEFENSE COUNSEL

30.   By signing this Plea Agreement, counsel for the Defendant acknowledges that:

a.    Counsel has carefully reviewed every part of this agreement with the Defendant and this agreement accurately and completely sets forth the entire agreement between the United States and the Defendant.

b.    Counsel has explained the ramifications of the Plea Agreement to the Defendant, and believes that the Defendant understands this Plea Agreement, what rights are being lost by pleading guilty, and what the United States has agreed to do in exchange for the plea of guilty.

c.    Counsel believes that the Defendant's decision to enter into this agreement is an informed and voluntary one.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

31.   The Defendant and his attorney both acknowledge that this Plea Agreement constitutes the

entire agreement of the parties.  Further, all parties agree that there are no oral agreements or

promises which have been made to induce the Defendant to change his plea to guilty.

Dated this _6th_ day of October, 2016.

Clarence C. Garretson
Defendant


J. Marvin Honeycutt
Attorney for Defendant

KENNETH ELSER
UNITED STATES ATTORNEY

By:

Kyra E. Jenner
Assistant U.S. Attorney

Page 18 of 18