IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:16CR20029-001 |
| | ) | |
| CLARENCE C. GARRETSON | ) | |

## SENTENCING MEMORANDUM

Comes now the United States of America, by and through, Kenneth Elser, United States Attorney for the Western District of Arkansas, and the undersigned Assistant United States Attorney, and files its Sentencing Memorandum pursuant to this Court's Scheduling Order. (Doc. 35).

## SENTENCING HEARING EVIDENCE

The Government will call two witnesses to provide evidence at the sentencing hearing. Nicole Nava will briefly testify to clarify a statement attributed to her in the Presentence Investigation Report ("PSR"). The statement is the subject of the Government's objection number four. Mrs. Meredith Roberts' testimony will provide evidence pertaining to the Defendant's objections number four and number five.

Ms. Nava's direct examination should take less than five minutes. Ms. Nava will testify about the following sentence in paragraph 86 of the PSR: "Nicole Nava stated that she was ultimately removed from the home but later learned that Lisa Garretson continued to provide the Department of Human Services ("DHS") with money for Nicole Nava's support even after Nicole Nava had left the home." Ms. Nava's testimony clarifying this statement does not affect the sentencing guideline calculation.

1

The testimony of Mrs. Roberts, mother of Minor #2, is relevant to Defendant's objections number four and number five. These two objections concern the two-level vulnerable victim enhancement, U.S.S.G. § 3A1.1(b)(1), applied in paragraphs 116 and 124 of the PSR. The PSR applied the vulnerable victim enhancement on evidence the Defendant knew Minor #2 was intellectually challenged when he committed the offense of conviction against her. A summary of Mrs. Roberts' expected testimony includes the following information:

- When Minor #2 was three years old, a neurologist diagnosed Minor #2 as "mentally retarded." Mrs. Roberts will testify that terminology is no longer in current use, but those were the words used by a medical professional when Minor #2 was diagnosed at a young age;

- Minor #2 was placed in special education classes in kindergarten;

- When Minor #2 was in fourth grade, Minor #2's teachers informed Mrs. Roberts that Minor #2 "had gone as far as [Minor #2] could go," and that "the most that [Minor #2] could learn from then on would be life skills," such as signing her name, making her bed, and preparing food to eat;

- At age eight, Minor #2 was diagnosed with Tourette's Syndrome;

- When Minor #2 was placed in the Garretsons' home, Minor #2 was supposed to use a special computer program that would convert Minor #2's spoken words into written words on the computer. According to Mrs. Roberts, this computer program was necessary because Minor #2 could not (and cannot now) compose and write basic sentences. Mrs. Roberts will testify that Minor #2 could not (and cannot now) write her own name legibly;

- Minor #2 has difficulty reading basic words and cannot spell and do simple math; and

- When DHS placed Minor #2 in the Garretsons' home, Minor #2 was a special education student with a "severe learning disability." Minor #2 had been diagnosed as "mentally retarded," was "severely depressed," suffered from a seizure disorder, had Tourette's Syndrome and exhibited an "intermittent explosive disorder."

Mrs. Roberts' direct examination should be approximately twenty minutes.

The Defendant himself has acknowledged Minor #2's intellectual disabilities. In a telephone conversation with Lisa Garretson recorded by the Sebastian County Detention Center on March 12, 2017, the Defendant refers to Minor #2 as "retarded." (Recorded jail call on March 12, 2017 at 12:57-13:05). The pertinent portion of the recorded telephone conversation, which is less than two minutes, will be available as evidence at the sentencing hearing. The Government, however, believes that the Court can make its requisite findings on Mrs. Roberts' testimony alone. Based on Mrs. Roberts' testimony, the Government will ask the Court to find that Minor #2's mental condition made her especially vulnerable to the Defendant's criminal conduct, that the PSR correctly applied the victim related adjustment of U.S.S.G. § 3A1.1(b)(1) in paragraphs 116 and 124, and overrule the Defendant's objections number four and number five.

### AUTHORITY FOR APPLICATION OF U.S.S.G. § 3A1.1(b)(1)

The PSR assessed the two-level enhancement in U.S.S.G. § 3A1.1(b)(1) because the Defendant knew Minor #2's mental condition made her an especially vulnerable victim. The Defendant contests the two-level increase applied pursuant to U.S.S.G. § 3A1.1(b)(1), and suggests that enhancement impermissibly double counted Minor #2's vulnerability as a victim because the two-level enhancement applied under U.S.S.G. § 2G1.(b)(2)(B) already accounted for her status as a victim.

A "vulnerable victim," as defined in the application note to U.S.S.G. § 3A1.1(b)(1), "means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3; and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." Minor #2 fits the definition of "vulnerable victim" as that term is defined in the application note. Minor #2 was a special education student with severe learning disabilities and physical and intellectual challenges. The Defendant was fully aware of this when he committed the offense of conviction against Minor #2. The evidence will show the Defendant knew Minor #2 was in special education classes and participated in Special Olympics. For example, Minor #2 would "sometimes ask Clarence C. Garretson for money so that she would be able to participate in Special Olympics. [Minor #2] recalled that Clarence C. Garretson displayed her Special Olympic medals in his truck from time to time." (PSR, ¶ 50). The Defendant took advantage of Minor #2's limited mental faculties when he told her "no one would believe [her] and that she would get in more trouble" if she told anyone about the sexual assaults. (PSR, ¶44).

After determining Minor #2 meets the definition of "vulnerable victim," the next inquiry is whether the application of U.S.S.G. § 2G1.3(b)(2)(B) and U.S.S.G. § 3A1.1(b)(1) constitutes impermissible double counting. The Eighth Circuit has held impermissible double counting does not apply where a "victim's vulnerability was not accounted for in either the base offense level or a special offense characteristic…." *United States v. Schoenborn*, 793 F.3d 964, 967 (8th Cir. 2015). In *Schoenborn*, the defendant appealed the district court's application of U.S.S.G. § 3A1.1 (b)(1) due to the victim's extreme intoxication. Although an element of the statute of conviction in *Schoenborn* required the victim of the offense to be incapacitated in some way, the sentencing guideline section used to calculate the base offense level did not address the diminished mental or

4

physical capacity of the victim.  *Id*.  In the case before this Court, neither the statute of conviction nor the sentencing guideline section, U.S.S.G. § 2G1.3, captured Minor #2's vulnerability due to her intellectual challenges.   While the PSR does reflect Minor #2 was unduly influenced by the Defendant because she was in his care, custody and control when he committed the offense of conviction, U.S.S.G. § 2G1.3(b)(2)(B) does not address the separate and distinct vulnerability of Minor #2 due to her  diminished mental capacity.  The Chapter Three adjustment for vulnerable victim appreciates the unique harm predicated upon one who is unusually susceptible to victimization, while U.S.S.G. § 2A3.1's "undue influence" enhancement does not capture that same concept.

The application of the vulnerable victim enhancement in U.S.S.G. § 3A1.1(b)(1) is not inconsistent with the application of U.S.S.G. § 2G1.3(b)(2)(B).  *United States v. Willoughby*, 742 F.3d 229 (6th Cir. 2014).  *Willoughby* involved a defendant convicted for sex trafficking of a minor. He argued on appeal the statutory offense of conviction took into account the sentencing enhancements in U.S.S.G. § 2G1.3(b)(2)(B) and U.S.S.G.  § 3A1.1(b)(1).  The Sixth Circuit upheld the application of both enhancements to calculate Willoughby's sentence.  The Sixth Circuit ruled the sentencing court properly applied U.S.S.G. § 2G1.3(b)(2)(B) because the defendant had unduly influenced the minor to engage in prohibited sexual conduct by posing as the victim's boyfriend and buying her gifts.  742 F.3d at 241(*citing United States v. Smith*, 719 F.3d 1120, 1125 (9th Cir. 2013)).  Willoughby also argued the vulnerable victim enhancement amounted to double counting because the offense of conviction took into account his victim was a minor.  He contended the offense of conviction required that the victim of the offense be a minor, and he pointed out on appeal that "all minors are vulnerable."  742 F.3d at 241.  The Sixth Circuit ruled the sentencing court properly applied U.S.S.G. § 3A1.1(b)(1) because the victim was "especially vulnerable for

5

reasons other than her age – including that she was a homeless runaway with a history of abuse and neglect." *Id.*

In conclusion, Defendant's objections number four and five should be overruled. Minor #2's intellectual challenges made Minor #2 especially vulnerable and more susceptible to the Defendant's sexual assaults. There is no impermissible double counting by assessing both U.S.S.G. § 2G1.3(b)(2)(B) and U.S.S.G. § 3A1.1(b)(1) pertaining to Minor #2.

## VICTIM ALLOCUTION

Pursuant to 18 U.S.C. § 3771 (a)(2), the Government has provided notice to all victims of the sentencing hearing date and time. Seven victims have informed the Government they wish to make an oral victim impact statement at the sentencing hearing.

## REQUEST FOR LIFE SENTENCE

The Defendant's total offense level is 49 and his criminal history category I. This results in an advisory guideline range of LIFE imprisonment. A sentence of LIFE imprisonment meets the statutory sentencing considerations in 18 U.S.C. § 3553(a) and is a reasonable sentence under the following facts.

The Defendant's criminal conduct with minors spans some eighteen years. In 1997, the Defendant's minor twin nephews reported to local law enforcement the Defendant had sexually assaulted each of them. (PSR, ¶¶ 209-214). Throughout 2000, 2001, 2002 and 2003, the Defendant sexually assaulted multiple foster children and two of his nieces. In July 2014, the Defendant sexually assaulted the 10-year-old victim of Count One of the Superseding Indictment. Therefore, the nature of the offense was ongoing and involved multiple minor male and female victims.

The sheer number of minors victimized by the Defendant is staggering. The Superseding Indictment identifies eight minor victims. The Defendant pled guilty to counts of conviction involving five of them. Six other victims who were not included in the Superseding Indictment are disclosed in the PSR. (PSR, ¶¶ 35 (footnote 1), 82, 84, 90, 209 - 214 and 215A). Based upon information in the PSR, the Defendant sexually assaulted fourteen minors over a period of 18 years. The nature and circumstances of the offenses were not one-time, isolated assaults. The Defendant was a serial predator who repeatedly engaged in criminal sexual activities with minors.

The nature and circumstances of the offense are exacerbated by the prior histories of the minor victims who were placed in the Defendant's home by DHS. Most of the foster care children who became the Defendant's victims had been physically and/or sexually abused, experienced abject poverty, had parents addicted to drugs or alcohol or been living in dangerously dysfunctional situations. The Defendant's victims from the foster care system came into the Defendant's home hoping for and expecting a more stable environment and better lives. They needed the Defendant's physical, emotional and academic support. To some victims, the Defendant and his wife were the only "family" they had.

The Defendant betrayed them. He preyed upon his victims' fears of abandonment, trust issues, isolation from any outside family support systems, low self esteem and insecurity. The Defendant used his home as a hunting ground for minor victims to satiate his sexual depravity. He used his truck to commit crimes under the guise the interstate truck trips he took the minors on were "vacations." (PSR, ¶52). He threatened his victims with repercussions particularly significant to them, such as separating them from siblings, moving them to another placement, punishing them with physical labor, and telling them that no one would believe them. The

Defendant's predatory conduct was especially cruel and callous because he victimized those who were already traumatized by previous sexual and physical abuse, neglect and severe mistreatment.

Society, especially minors, must be protected from further crimes of the Defendant. The Defendant informed the United States Probation Officer that he is "physically incapable of doing the things they say [he] did." (PSR, ¶ 97). Despite his claim of sexual impotency, the Defendant remains a danger to society because his sexual assaults were not committed solely by engaging in sexual intercourse. The Defendant has no documented physical impairment that would prevent him from committing criminal sexual assaults on minors using the same means described in paragraphs 33, 54, 56, 62 - 64, 84 - 85, 92, 209 - 210, 214 and 215A of the PSR. Therefore, to protect society, the Defendant's sentence must take into account this Defendant, who claims he is impotent, is still physically capable of sexually assaulting minors for the remainder of his life.

The Defendant's age (65) is not a factor that provides any assurance he will no longer be a danger to society if released from prison within his lifetime, for the same reason stated above. The Defendant has demonstrated a protracted and unabated desire to have sex with minors for the past eighteen years. This is not a proclivity nor sexual preference that wanes or disappears completely as a sexual offender ages. A sentence of LIFE imprisonment is the only deterrence to the Defendant's criminal conduct.

Finally, this Court must consider the types of sentences available and the need to impose a sentence that is not disparate with other sentences imposed for similar conduct. The Government believes the nature and circumstances of the Defendant's conduct is analogous to that in *United States v. Bernie Lazar Hoffman*, 4:08-cr-40020-HFB (the "Tony Alamo" case). After a jury trial, Alamo was convicted on ten counts of violating 18 U.S.C. § 2423(a) involving five minor females. Likewise, the Defendant before this Court has been convicted of violating 18 U.S.C. § 2423(a)

involving five minors, the same number of minor victims in Alamo's counts of conviction. Similarly, both defendants used their respective positions of power and authority to gain access to their victims. Each incorporated fear tactics and threatened retribution to silence their victims. Both perpetrated sexual assaults on minors for many years. Judge Barnes imposed a sentence on Alamo "for a total term of imprisonment for LIFE. (Doc. 152, p. 3 in 4:08-cr-40020-HFB). A sentence of LIFE imprisonment is warranted for this Defendant, whose longstanding pattern of criminal sexual abuse of multiple minors mirrors the nature and characteristics of the offenses for which Alamo was sentenced to incarceration for LIFE.

                Respectfully submitted,

                KENNETH ELSER
                UNITED STATES ATTORNEY

By:   */s/ Kyra E. Jenner*
       Kyra E. Jenner
       Assistant U.S. Attorney
       Arkansas Bar No. 2000041
       414 Parker Avenue
       Fort Smith, AR 72901
       (479) 783-5125
       Kyra.Jenner@usdoj.gov

## CERTIFICATE OF SERVICE

I, Kyra E. Jenner, Assistant U. S. Attorney for the Western District of Arkansas, hereby certify that on May 10, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Jess Marvin Honeycutt, attorney for Defendant, Marvin@honeycuttlawoffices.com
Amanda Donat, U.S. Probation Office, Amanda_Donat@arwp.uscourts.gov

*/s/ Kyra E. Jenner*
Kyra E. Jenner
Assistant U.S. Attorney